Good morning, your honors. My name is Jacob Sheffitz from Patterson, Belknap, Webb & Tyler, counsel for Petitioner Orben Ortiz. May it please the court. Mr. Ortiz, let me ask you this. I mean, you know, our usual practice would be to hold the case pending a decision in the Supreme Court. And you wanted us to go forward. So why should we not hold? Why should we not wait for the Supreme Court to rule? Yes, your honor, we believe you should move forward for three reasons. The first is that this court, I'm sorry, the Supreme Court could benefit from this court's views on this particular issue. This court accounts for a significant percentage of the nation's immigration docket. So it'd be useful for the Supreme Court to hear what the Second Circuit has to say. Second, other courts throughout the country have continued issuing decisions based on this stop time rule. Just as recently as October 30th, the 10th Circuit issued a decision. That's Reyes-Luevanos v. Barr. And they continue to do so even though Nies-Chavez is currently pending before the Supreme Court. And third, in the immigration context, delay typically will favor the non-citizen because it buys him or her a little more time in the country. The exact opposite is the case here. Mr. Ortiz is trying to reopen his proceedings to return to the country and return to his family in New York. And the longer that this case gets drawn out, at least for Mr. Ortiz, he continues to experience irreparable harm every single day that he's separated from his family. Those are the on this case are appropriate. We appreciate, obviously, that there is currently a... It was already argued. Yes. So that's a little bit of a difference. And I'm somewhat receptive, actually, to the idea that you weigh in certainly before argument in front of the Supreme Court. And that might have an impact, although my own view is that they don't really listen to us anyway. But here, there was an argument, and it was fully fleshed out. You have a pretty good sense of maybe reading Teely's where this might go. Is it really going to have an impact if we say something one way or the other? So far be it from me to try to predict the inner workings of the Supreme Court. But at the very least, the opinion of this court will be out there. It will be there for the Supreme Court to know what goes on behind those closed doors. But having that opinion out there is definitely something that the Supreme Court can read. It will be available to them. So even though the case has been argued and we perhaps... We don't know for sure. We don't know how every justice will view it. And also, sometimes you never know based on oral argument what actually will happen. I still think an opinion would be helpful. If there are no further questions on these, Chavez, I'm happy to continue. Mr. Ortiz seeks to reopen his proceedings. And I think it's useful to remember that the immigration court here actually granted Mr. Ortiz's motion to reopen initially based just on Pereira. The immigration court found that the equities favor Mr. Ortiz, and that the in the interest of justice to reopen Mr. Ortiz's proceedings and allow him to pursue cancellation of removal. So the immigration court therefore granted Mr. Ortiz's motion, but then only reconsidered that decision based on a motion to reconsider by the government. And that motion to reconsider was just based on the application of Pereira. And based on that issue, whether Pereira would apply and whether the stop time rule is triggered here, the immigration court reversed it, reconsidered. The BIA then put a stamp of approval on that. And now we're here. The only issue here then is whether the stop time rule is triggered. There are other ancillary issues, but the government hasn't really stood on them. And the only real ground here for this point. And I would also like to just point out the reasons why the BIA's piecemeal notice theory is incorrect as a matter of law. The statutory text, the statutory history, the statutory purpose, not to mention the clear separation of powers between DHS and the immigration courts, all counsel towards one straightforward conclusion. A notice to a peer is a single legally operative charging document that can't be... Do you have a different answer to the question that was posed in the Supreme Court to basically your counterpart, which is that if you had a bunch of different documents that were put together and stapled together, including the notice of a peer, which itself did not have the requisite information, but all of the other documents that were together contain the necessary information, that would be enough, correct? If they're all stapled together in the same envelope, yes, I agree with, I guess... If they're in loose leaf in the same envelope, that would be enough. If they're all collated together, I think in that situation, yes. Why analytically? We're talking about an analysis based on regulations and statutes. Why is that different from a notice of appearance that doesn't have the information, but then subsequent documents come in, and as a matter of just understanding the scheme and Congress's requirement and the regulatory requirement, other documents come in that don't? We submit that a notice to appear has to be a single document. You just told me that a notice of appear can be a notice of appear that's blank as to the relevant information, but other documents that are supplied contemporaneously with it can fill in those blanks, and that would be adequate. We would submit that a bunch of papers stapled together in one single envelope gets within the ambit of a single document. I would say that's different, though, than if the mailings are separated by a week, and that's exactly the problem that Congress is trying to avoid is all these papers... Why is it different? Why is it different? Because when everything is together, it makes it clear to the non-citizen what exactly is being required of him or her. It explains why they're receiving this package in the mail. What the church... The first document is missing a date and time. The second document arrives a week later in the mail, and you don't think that would be sufficient? That fills in the date and time. No, Your Honor, we do not believe that is sufficient because I don't think one can argue that two separate documents coming from two separate entities at two separate times are one document. That would seem to stretch the phrase one document beyond any comprehensible meaning, and the reason for that, as I guess I was saying, is that once everything is together, it's much easier for the non-citizen to know what's going on. It prevents papers from getting lost. It prevents papers from... It prevents confusion, and that actually is what happened in Pereira, where the non-citizen never received the notice hearing. Everything is much more straightforward when everything is on one document, and I guess we can quibble, as the Supreme Court did, whether a bunch of papers stapled together constitute one document, but I think it's clear that two documents that are submitted at very different times by different entities are surely not. I see my time is up. We'll hear from the government. You have some time for rebuttal. Thank you. Good morning, Your Honors, and may it please the Court. Cori Farrell on behalf of the Attorney General. As this Court recognized, this issue is currently pending before the Supreme Court. The Supreme Court heard argument, and we will have that decision at some point, but... And it's the precise issue. There would be no way to distinguish this case from that case, is that... The issue in that case and in this case is whether an incomplete NTA followed by a hearing notice, which completes that document, is together sufficient to stop accrual of continuous physical presence. And importantly, the Supreme Court's decision in Ms. Chavez will also tell us whether this Court's decision in Guamaringa remains good law, because this Court did decide in Guamaringa that this two-step procedure satisfies the requirements to trigger the stop-time rule. We also have the Board's intervening decision of matter of Mendoza-Hernandez, and as the government argued in its brief, and as the Sixth Circuit and the Fifth Circuit have concluded, this... Mendoza-Hernandez is the best interpretation of the INA's notice requirements, and those Courts base it on the plain language of the statute, but also determine that if the statute were ambiguous, it would defer to the Board's decision in Mendoza-Hernandez. And if the Court has any specific questions on Ms. Chavez or the Board's decision in Mendoza-Hernandez, I'd be happy to answer those questions. Thank you. And for the foregoing reasons, we rest on our briefs and request that the Court deny the petition. All right. We'll hear the rebuttal. Thank you. I'm just going back to Ms. Chavez. One point I just want to reiterate is that the Supreme Court might not decide Ms. Chavez until June, potentially. In fact, it waited until June 2018 to decide Pereira. So we're talking about a substantial amount of time, and for the reasons I mentioned earlier, that's a significant delay that causes irreparable harm for our clients, and it still offers a Let me ask, there's a little bit of a problem, I guess, on both sides. But if we were to rule in your favor and grant the petition and remand, as I think you're requesting, and then the Supreme Court, I don't know what the timeline is for your client to return. I don't even know really fully the mechanics of it. But if the Supreme Court were to reverse, that is, issue a decision that's adverse to your client's interests, then where would we be left? I mean, it would be—what would happen? Presumably, I can't obviously predict the future, but I would— I'm giving you a preview of a possible future, so work with that. So I presume that the government would then submit a motion to remove my client. And if that were to happen, then we'd have to litigate whatever the Supreme Court, based on whatever the Supreme Court ultimately decides. So we would be back to sort of square one. Actually, worse, because it'd be pollucively clear. But there would be another removal proceeding. If that were the case, yes. But also, if the Supreme Court went the other way, that would also mean that my client would just be waiting for this long time before he was rightfully allowed to return. So it sort of cuts both ways, I would say. But if the Supreme Court were to rule adversely for my client, then we'd have to—the government would then be able to take it from there. Are you doing this pro bono, or are you— This is pro bono, yes. Thank you. All right. Thank you both. The court will reserve decision.